IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER GRIFFIN,

                  Plaintiff,

    v.

KRISTOFER ASLA, NICOLE
KEIDEL, ALLISON BROWN, and
CITY OF SHERWOOD, a political
subdivision of the State of Oregon,

                Defendants.

No. 3:21-cv-01036-MO

OPINION & ORDER

Michelle R. Burrows
Michelle R. Burrows PC
16869 SW 65th Ave, Suite 367
Lake Oswego, OR 97035

      Attorneys for Plaintiff

Kenneth S. Montoya
Rebeca A. Plaza
Law Offices of Montoya, Hisel and
Associates
901 Capitol Street NE
Salem, OR 97301

      Attorneys for Defendants Asla,
      Keidel, and City of Sherwood

Dirk L. Pierson
Nicholas Mancuso
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301

      Attorneys for Defendant Brown

MOSMAN, District Judge:

      In 2019, Christopher Griffin was arrested and spent nine months in jail for allegedly sodomizing a child before a jury acquitted him of all charges. Mr. Griffin claims that the investigation and prosecution violated his rights under the United States Constitution. He alleges that the prosecutor failed to turn over material evidence to his criminal defense attorney, gave false statements about the status and availability of evidence, continued to prosecute him despite finding no evidence that supported the victim's story, and kept him in jail through his trial despite knowing that the premise for his pretrial detention was false. Mr. Griffin also alleges that a police detective attributed statements to the victim that were not made by her, ignored the victim's conflicting statements, failed to consider other potential suspects, made false statements in a search warrant affidavit, directed officers to mute the audio on their body-worn cameras while conducting searches, failed to examine seized evidence that would have been exculpatory, and continued to investigate Mr. Griffin after probable cause had dissipated.

      What relief is Mr. Griffin entitled to seek for the alleged misconduct by the prosecutor and investigating officers? It will surprise many people to learn that the answer required by law is none. The judicially created doctrine of absolute prosecutorial immunity shields a prosecutor from civil liability, even if the prosecutor egregiously violates a criminal defendant's constitutional rights. And once the criminal defendant has been indicted, qualified immunity protects investigating officers against claims for malicious prosecution. Thus, even if Mr.

Griffin's allegations are true, under current law, the prosecutor and investigating officers are entitled to summary judgment.[1]

## BACKGROUND

Plaintiff Christopher Griffin brings this action under 42 U.S.C. § 1983, alleging malicious prosecution in violation of his Fourth Amendment rights and violation of his due process rights against Defendants Kristopher Asla, Nicole Keidel, and Allison Brown. Plaintiff also brings a claim for municipal liability and a claim under Oregon state law for malicious prosecution against the City of Sherwood, Oregon. Defendants move for summary judgment on all claims.[2] The relevant facts are as follows.

## I.    Criminal Investigation, Arrest, and Indictment

On March 19, 2019, Plaintiff was indicted by a grand jury in Washington County Circuit Court on 24 counts of sexual abuse, sodomy, and unlawful sexual penetration involving eight separate incidents between July 2018 and February 2019. Pl. Ex. 2, ECF 38-2. At the time of the alleged incidents, Plaintiff was a piano teacher who worked as an independent contractor out of a studio owned and managed by his mother in Sherwood, Oregon. On March 7, 2019, A.S., an eight-year-old female student, told her grandmother that Plaintiff had sodomized her during several piano lessons. Asla Decl. ¶ 4, ECF 28. After hearing the allegations, A.S.'s mother took

---

[1] At least with regard to prosecutors, case law tells Plaintiffs like Mr. Griffin that even though they cannot sue for damages, they may take comfort in their ability to report prosecutors to their state's bar association. *See Imbler v. Pachtman*, 424 U.S. 409, 429 ("[A] prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers."). In so doing, we punt to a private association of lawyers the task of disincentivizing their peers from wantonly violating the constitution.

[2] Defendant Brown filed a motion for summary judgment separate from the motion filed jointly by Defendants Asla, Keidel, and the City of Sherwood.

her to a local doctor. *Id.* A.S. told a similar story to the doctor, who then called the Sherwood

Police Department. *Id.*

After receiving the report from the doctor, Defendant Kristopher Asla, a detective with

the Sherwood Police Department, led the investigation into the allegations of sexual abuse.

Burrows Decl. Ex. 4, ECF 41-5. On the evening of March 7, 2019, Detective Asla and another

Sherwood police officer spoke with Plaintiff at his home. Asla Decl. ¶ 14. Plaintiff denied that he

had engaged in any sexual or otherwise inappropriate contact with any of his piano students. *Id.*

¶ 17. On March 8, 2019, Detective Asla attended an evaluation of A.S. conducted by the Child

Abuse and Evaluation Services NW ("CARES") team. *Id.* ¶ 24. During the CARES interview,

A.S. described that Plaintiff would "put cream on his finger or his privates" before sodomizing

her and that the cream came from a black bottle that Plaintiff kept in his desk. *Id.* A.S. said that

the door to the studio room where the abuse occurred was always locked. *Id.* ¶ 30. She drew a

picture of the room, which showed Plaintiff standing near a desk, holding a bottle of lotion with

one hand and his penis with the other while A.S. lay prone on a piano bench. *Id.* ¶ 28; Asla Decl.

Ex. 2, ECF 28-2. A.S. also drew a picture of Plaintiff's penis showing dots, which she described

as rough. *Id.* ¶ 27; Asla Decl. Ex. 1, ECF 28-1. The CARES team nurse reported that A.S. had a

normal physical exam with no physical evidence of trauma, although an anogenital examination

was not done. Burrows Decl. Ex. 5, ECF 41-6.

The same day, March 8, 2019, officers obtained three pairs of A.S.'s underwear from her

home for analysis. Burrows Decl. Ex. 8, ECF 41-9. Detective Asla submitted an affidavit in

support of warrants to search both the music studio and Plaintiff's residence. *Id.* The affidavit

included a description of what the doctor, A.S.'s mother, and A.S.'s grandmother said that A.S.

had told them. *Id.* Detective Asla also described his observation of the CARES evaluation,

including the pictures A.S. drew. *Id.* Washington County Assistant District Attorney Allison

Brown reviewed the search warrant applications but did not participate in their drafting. Burrows

Decl. Ex. 45 ("Brown Dep.") 47:5-9, ECF 43-42. On March 9, 2019, Sherwood Police

simultaneously conducted searches pursuant to the warrants at the music studio and at Plaintiff's

residence. Asla Decl. ¶ 34. Detective Asla was initially part of the team that searched the music

studio. *Id.* Officers turned on body-worn cameras during the search but muted the audio on those

cameras. Burrow Decl. Ex. 30, ECF 41-31. Officers seized some items and swabbed piano

benches for evidence. Asla Decl. ¶ 37. No desk and no bottles of cream, lotion, or other lubricant

were found in Plaintiff's teaching room. Burrows Decl. Ex. 15, 19, ECF 41-16, ECF 41-20.

Defendant Asla later joined the team of officers searching Plaintiff's home. *Id.* ¶ 38.

From Plaintiff's home, officers seized two bottles of sexual lubricant (one that was black), which

were found in the nightstand that belonged to Plaintiff's wife, Riley Griffin. *Id.* ¶ 39; Burrows

Decl. Ex. 36 ("R. Griffin Dep.") 28:12-30:13, ECF 41-37. Ms. Griffin told officers that she

received the black bottle of lubricant as a bridal shower gift. R. Griffin Dep. 41:4-16. Officers

also seized seven electronic devices in total from the studio and from Plaintiff's home. Asla

Decl. ¶ 39. Asla then directed another officer to arrest Plaintiff. *Id.* ¶ 40.

The next day, March 10, 2019, at 1:54 PM, Plaintiff was released from the Washington

County jail on bail with a release agreement. Mitchell Decl. ¶ 7, ECF 31. The release agreement

included a provision that Plaintiff was "not to have any contact with the victim's family, co-

defendant's or witness's." *Id.*; Burrows Decl. Ex. 26, ECF 41-27. At 5:01 PM on that day, A.S.'s

mother received an email from Plaintiff's email address notifying her that a payment for piano

lessons was overdue. Mitchell Decl. ¶ 7; Burrows Decl. Ex. 24, ECF 41-25. The mother,

concerned about the no-contact order, informed Sherwood police and forwarded the email to

Defendant Officer Nicole Keidel. Burrows Decl. Ex. 24. Officer Keidel reviewed several prior emails from the piano studio to A.S.'s mother, including some from Plaintiff and some from his mother, the studio owner. Mitchell Decl. ¶ 7; Burrows Decl. Ex. 24. Officer Keidel sought to determine whether the email from Plaintiff's account was an automated billing email or whether it was sent volitionally by Plaintiff. Over the next two days, Officer Keidel tried to contact Plaintiff's mother several times but was unsuccessful. Mitchell Decl. ¶¶ 8-9. On March 12, 2019, Officer Keidel concluded that she had probable cause to arrest Plaintiff for violating his release agreement based on the email to the victim's mother. *Id.* ¶ 11. She arrested Plaintiff and transported him to the Sherwood Police Department and then to the Washington County Jail, where he remained in custody until his trial. *Id.* Officer Keidel had no further contact with Plaintiff and did not otherwise participate in the investigation into his alleged crimes.

On May 1, 2019, a digital forensics investigator notified Detective Asla that the music studio has a system to track automated invoicing that could have helped determine whether the email sent from Plaintiff's account to the victim's mother was autogenerated. Burrows Decl. Ex. 25, ECF 41-26. Neither Detective Asla nor Assistant DA Brown evaluated the studio's automated invoice tracking system to determine whether Plaintiff had violated his release agreement.

Shortly after Plaintiff was re-arrested and while he was being held at the Sherwood Police Station, Detective Asla obtained physical evidence from Plaintiff pursuant to a search warrant. Asla Decl. ¶¶ 42, 43. Detective Asla photographed Plaintiff's genitals and obtained buccal oral swabs for DNA. *Id.* ¶ 42. Based on his review of the photographs, Asla observed that Plaintiff had small bumps on his penis that corresponded to the drawing by A.S. *Id.* ¶ 42. On March 14, 2019, Detective Asla and several other officers executed another search warrant at the music

studio, where they seized a piano bench and took photos and videos of the interior of the business, including the locking mechanism of the door to one of the private rooms. *Id.* ¶ 44.

Plaintiff was indicted by a grand jury on March 19, 2019. Pl. Ex. 2, ECF 38-2. Detective Asla testified about A.S.'s statements and drawings, the bottle of lubricant, and the photograph of Plaintiff's genitals. Burrows Decl. Ex. 11, ECF 41-12. After being indicted, Plaintiff remained in custody until December 19, 2019, when his jury trial ended in an acquittal on all charges. Pl. Ex. 5, ECF 38-5.

## II.    Discovery and Prosecution

In March and April 2019, Plaintiff's criminal defense attorney sent three discovery requests, seeking material from the CARES evaluation, body-worn camera footage, police reports, and other photographs and interviews. Burrows Decl. Ex. 2, ECF 43-3; Ex. 5, ECF 43-6, Ex. 6, ECF 43-7. In July 2019, four months after his defense attorney's initial discovery request and after a court order granting counsel's motion to compel, Defendant Brown turned over video of the CARES interview. Pl. Ex. 1, ECF 38-1. Brown also did not provide the search warrants and affidavits to Plaintiff's criminal defense attorney until July 2019. *Id.* Plaintiff's defense attorney also sought the DNA analysis from A.S.'s underwear, which was completed on May 8, 2019, but not turned over by Defendant Brown until August 30, 2019. Pl. Ex. 21. No seminal fluid was found on the underwear. *Id.*

The seven electronic devices seized from Plaintiff's home and the music studio were sent to the Washington County Digital Forensic lab. A forensic investigator extracted data from the electronic devices, archived the extractions on a hard drive, and sent the hard drive to Detective Asla on May 2, 2019. Pl. Ex. 14, ECF 43-15. Plaintiff's cell phone, which had also been seized, was not examined until August 2019. Investigators found one child abuse image on the phone.

Burrows Decl. Ex. 33, ECF 43-32. A forensic investigator determined that photo to be a known malware image that can be installed on a cell phone without the owner accessing the image or even knowing about it. *Id.* There was no evidence that Plaintiff placed the image on the phone, downloaded the image, or otherwise accessed it. *Id.* No evidence of child pornography was found on any of the other electronic devices.

In August 2019, Plaintiff's defense attorney filed a second motion to compel, seeking evidence obtained from the electronic devices. Burrows Decl. Ex. 29, ECF 43-28. On August 30, 2019, in response to the motion to compel, Defendant Brown told the court that the forensic evaluation of the electronic devices had not been completed and that the cell phone was still being processed. Burrows Decl. Ex. 30, ECF 43-29. On September 4, 2019, in response to a request from Plaintiff's criminal defense attorney, Detective Asla picked up the hard drive and a CD containing the raw data from the forensics lab. Asla Decl. ¶ 45. The next day, Asla gave Plaintiff's criminal defense attorney's investigator the hard drive and CD but told the investigator he was unable to access the data and could not help her do so. *Id.* ¶ 46. Sometime later, Detective Asla received a CD from the forensics lab from which he could access the data. *Id.* The data was provided to Plaintiff's criminal defense attorney's investigator on the same day Asla received it. *Id.*

Due to delays in receiving discovery, Plaintiff's criminal defense attorney twice moved to reset his trial date. Pl. Ex. 1. Both motions were granted. *Id.* Although delayed, Plaintiff's criminal defense team received all the discovery it had requested before Plaintiff's trial in December 2019. Pierson Decl. Ex. A ("Griffin Dep.") 310:14-20, ECF 25-1.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff brings three claims under 42 U.S.C. § 1983: (1) malicious prosecution in violation of the Fourth Amendment against Defendants Brown, Asla, and Keidel; (2) due process violation against Defendants Brown, Asla, and Keidel; and (3) a *Monell* claim for municipal liability under the Fourth, Fifth, and Sixth Amendments against the City of Sherwood ("City"). Plaintiff also brings a state common law claim against the City for malicious prosecution.

Defendant Brown moves for summary judgment based on absolute prosecutorial immunity. Defendants Asla and Keidel assert that they are entitled to qualified immunity and argue that probable cause existed for Plaintiff's arrest and continued prosecution. The City asserts that Plaintiff has failed to establish municipal liability under *Monell*.

## I.    Prosecutorial Immunity

At common law, criminal prosecutors have long been immune from suits by criminal defendants alleging malicious prosecution. *Burns v. Reed*, 500 U.S. 478, 485 (1991). For the same public policy reasons, the Supreme Court has held that a prosecutor is entitled to "the same absolute immunity under § 1983 that the prosecutor enjoys at common law." *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). In *Imbler*, the Court reasoned that without absolute immunity, the threat of a suit under § 1983 would undermine a prosecutor's performance of their duty because their "energy would be diverted from the pressing duty of enforcing criminal law" and "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to proper functioning of the criminal justice system." *Id.* at 425, 427-28. Thus, "a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Id.* at 420. Once prosecutorial immunity attaches, it is absolute and therefore applies to claims of malicious prosecution. *Id.* at 427.

Plaintiff concedes that Defendant Brown is entitled to absolute immunity for her decision to prosecute him for the alleged crimes. But Plaintiff argues that Defendant Brown is not entitled to immunity from liability for actions outside her role as prosecutor. Plaintiff summarizes Defendant Brown's conduct that falls outside her prosecutorial role as "making false statements to the court and actively working to violate the Constitutional rights of [Plaintiff] by withholding evidence, manipulating evidence, lying about evidence and providing false information on how to access the evidence." Compl. ¶ 71, ECF 1. Plaintiff alleges four specific actions by Defendant Brown for which he claims that she is not entitled to absolute prosecutorial immunity: (1) "Statements to the court . . . which were false and misleading;" (2) "Statements to defense counsel which were false and misleading;" (3) "Her refusal to provide discovery after she possessed it particularly Brady material [sic] and her false representations on the status of that material;" and (4) "Her decision not to correct the record when it was apparent [Plaintiff] had not contacted the victims." Pl. Resp. Def. Brown Mot. Summ. J. 23, ECF 44.[3] But Plaintiff misinterprets the scope of immunity granted to prosecuting attorneys.

Prosecutors are protected by absolute immunity from damages for all functions that are prosecutorial in nature. *See Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999) ("Prosecutors are extended absolute immunity from damages when performing activities closely associated with the judicial process."). In other words, "prosecutors are absolutely immune from liability under § 1983 for their conduct . . . that . . . is 'intimately associated with the judicial phase of the

---

[3] Plaintiff concedes that Defendant Brown is entitled to absolute prosecutorial immunity for these actions: (1) "Decisions to prosecute and present evidence to Grand Jury;" (2) "Responding to Motions and appearing in court except for the deceptive information provided;" (3) "Decisions not to offer a plea deal;" (4) "Decisions to proceed to trial;" (5) "Decisions about witnesses to call to trial;" and (6) "Decisions about which evidence to present in trial unless she was aware the testimony was false or likely to mislead." Pl. Resp. Def. Brown Mot. Summ. J. 22-23.

criminal process.'" *Burns*, 500 U.S. at 486 (quoting *Imbler*, 424 U.S. at 430, 431). Prosecutorial functions that are protected by absolute immunity include "initiating a prosecution and presenting the State's case, appearing at a probable cause hearing to support the application for a search warrant, and preparing and filing an arrest warrant." *Ewing v. City of Stockton*, 588 F.3d 1218, 1232-33 (9th Cir. 2009). Prosecutors are immune from civil liability for such functions because they "involve the prosecutor's role as an advocate for the State rather than [their] role as administrator or investigative officer." *Burns*, 500 U.S. at 491. Duties of a prosecutor in their role as an advocate, which are entitled to absolute immunity, may include "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 486.

To determine whether a particular action should receive absolute immunity, courts look to "the nature of the function performed, not the identity of the actor who performed it." *Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1129 (9th Cir. 2011) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Prosecutors are not entitled to immunity for administrative, regulatory, or investigatory acts unrelated to their preparation for and initiation of prosecution. *Romano,* 169 F.3d at 1186. Courts have found that actions by prosecutors not entitled to immunity include advising police officers whether probable cause exists during their pretrial investigation, fabricating physical evidence at a crime scene before probable cause has been established, holding a press conference, and serving as a fact witness in support of an arrest warrant application. *al-Kidd v. Ashcroft*, 580 F.3d 949, 959 (2009), *rev'd on other grounds*, 563 U.S. 731 (2011) (citing *Burns*, 500 U.S. at 496; *Buckley*, 509 U.S. at 274-78; *Kalina*, 522 U.S. at 130-31).

An important timing issue exists regarding Plaintiff's claims against Defendant Brown. All of Defendant Brown's actions that Plaintiff claims are precluded from absolute immunity were taken after a grand jury determined that there was sufficient evidence to charge Plaintiff with the alleged crimes. Generally, a prosecutor does not function as an advocate for the State before probable cause to arrest and prosecute a defendant has been established. *Buckley*, 509 U.S. at 274; *but cf. Kalina*, 522 U.S. at 129 (noting that a prosecutor's role in determining whether probable cause exists and preparing and filing an arrest warrant and charging document are protected by absolute immunity). But once probable cause has been established, and an indictment has been issued, the prosecutor's duties moving forward typically involve "performing a traditional function of an advocate for the State, namely overseeing trial preparations." *KRL v. Moore*, 384 F.3d 1105, 1112-13 (9th Cir. 2004).

Nevertheless, while "the timing of a prosecutor's conduct informs our determination of the function performed, [] it is not determinative." *Id.* at 1111. In some cases, after probable cause has been established, "a prosecutor can still perform 'police investigative work.'" *Id.* (quoting *Buckley*, 509 U.S. at 274 n.5). If such investigatory acts fell outside their role as prosecutor, prosecutorial immunity would not apply, even if those acts were taken after the criminal defendant was indicted. *Id.*

Here, none of the actions that Plaintiff argues should be excluded from absolute immunity fall outside Defendant Brown's prosecutorial role. On the contrary, each of the alleged acts involved duties in Defendant Brown's role as advocate for the State in the criminal proceeding against Plaintiff. Even taken as true, Plaintiff's claims that Defendant Brown provided false and misleading statements to the court and defense counsel, refused to provide

discovery, and withheld *Brady* material were part of her duties in prosecuting the case against

Plaintiff and preparing for trial.

Plaintiff claims that Defendant Brown is not immunized from actions involving deceit

and misrepresentation to the court. But under current precedent, Plaintiff is mistaken. After

probable cause had been established, in her role as an advocate for the state, Defendant Brown is

entitled to prosecutorial immunity for *all* actions she took in preparing for trial and seeking a

conviction. "[A] prosecutor is absolutely immune from liability for the knowing use of false

testimony at trial." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (citing *Imbler*, 424

U.S. at 431). A prosecutor's decision not to preserve or turn over exculpatory material before

trial may be a *Brady* violation, but "is, nonetheless, an exercise of the prosecutorial function and

entitles the prosecutor to absolute immunity from a civil suit for damages." *Id.* (citing *Imbler*,

424 U.S. at 431-32 n.34). Even where a prosecutor "used perjured testimony, deliberately

withheld exculpatory information, or failed to make a full disclosure of all the facts," the

prosecutor is immune from civil liability if such action occurred after probable cause had been

established and the prosecutor was serving as an advocate for the state in prosecuting the

criminal case. *Id.* (quoting *Prince v. Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978)).

As for Defendant Brown's motion for summary judgment, the Court must view the facts

presented in the light most favorable to Plaintiff as the non-moving party. But even if Plaintiff's

allegations are true—that Defendant Brown provided false information to defense counsel, lied

to the court about the status of forensic testing of electronic devices, refused to provide evidence

to defense counsel, and continued to prosecute Plaintiff despite knowing probable cause had

dissipated—the Court finds that Defendant Brown took all these actions while serving in her

prosecutorial role. Thus, Defendant Brown is entitled to summary judgment as a matter of law because she is protected from civil liability by absolute prosecutorial immunity.[4]

## II.    Qualified Immunity for Individual Police Officers

A defendant is entitled to qualified immunity against § 1983 claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*¸ 457 U.S. 800, 818 (1982). The right must have been clearly established at the time of the defendant's alleged misconduct, so that a reasonable official would have understood that what they were doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."). In determining whether individual officers are entitled to qualified immunity, a court must address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Plaintiff brings two claims against Detective Asla and Officer Keidel: a claim for malicious prosecution under the Fourth Amendment and a claim for due process violation under the Fourth, Fifth, and Sixth Amendments. Plaintiff bases both claims on the same alleged conduct by Defendants. Namely, Plaintiff contends that Defendants provided false and misleading information in an affidavit in support of search warrants; manipulated witness statements in reports; turned off body-worn cameras during evidence seizures and witness

---

[4] Plaintiff bases both his claim for malicious prosecution and his claim for due process violation on the same alleged actions by Defendant Brown. Thus, the Court finds that Defendant Brown is entitled to prosecutorial immunity for both claims.

interviews; violated department policy on the use of body-worn cameras; engaged in manipulative and abusive investigative techniques, particularly when interviewing witnesses; and ignored and hid exculpatory evidence. Compl. ¶ 84. Thus, as to both constitutional claims, the Court addresses whether the individual officers are entitled to qualified immunity for the alleged actions that give rise to those claims.

To prove a constitutional violation for malicious prosecution under § 1983, "a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and they did so for the purpose of denying him equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (internal brackets omitted). Along with claims against prosecutors, plaintiffs may bring claims for malicious prosecution against "other persons who have wrongfully caused the charges to be filed." *Id.* A malicious prosecution claim may lie against government officials who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.* at 1067.

Based on a long-standing principle of common law, a decision by a judge "to hold a defendant to answer after a preliminary hearing constitutes *prima facie*—but not *conclusive*—evidence" that officers had probable cause to arrest the defendant and begin a criminal investigation. *Scafidi v. Las Vegas Metro. Police Dep't*, 966 F.3d 960, 964 (9th Cir. 2020) (citation omitted). And when a prosecutor files a criminal complaint, investigating officers are immunized from liability "because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest

exist[ed] at the time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981). But a plaintiff can rebut the *prima facie* finding of probable cause "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct taken in bad faith." *Awabdy*, 368 F.3d at 1067; *see Manuel v City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017) (holding that the Fourth Amendment is violated when a judge's probable cause determination rests solely on a police officer's false statements). And "a showing that the [prosecutor] was pressured or caused by the officers to act contrary to [her] independent judgment will rebut the presumption and remove the immunity" for the officers. *Smiddy*, 665 F.2d at 266. The plaintiff must also show that the officers acted maliciously or with reckless disregard for their rights. *Id.* at 267.

Plaintiff was indicted for sodomy, unlawful sexual penetration, and sexual abuse of a minor on March 19, 2019, which created a rebuttable presumption that the officers had probable cause to arrest him for those crimes. Plaintiff concedes that Defendants "likely possessed probable cause to arrest Plaintiff initially and hold him for prosecution." Compl. ¶ 76. But Plaintiff asserts that as of July 2019, five months before trial, the government knew or should have known that it lacked sufficient probable cause to continue prosecuting him. Thus, Plaintiff claims the ongoing prosecution and his criminal trial were conducted maliciously and without good faith.

### A.    Detective Asla

As to Detective Asla's individual role in the alleged malicious prosecution, Plaintiff describes several concerns with the investigation into the charges against him. Plaintiff first objects to Detective Asla's initial handling of the victim's statements. Specifically, Plaintiff argues that Detective Asla disregarded the victim's shifting stories and failed to properly

consider how her mother and grandmother may have influenced the statements the victim made

to the CARES interviewer. Plaintiff also asserts that Detective Asla "ignored conflicting

statements, failed to interview witnesses who could verify or dispute" statements made by the

victim, and "relied solely on the child's statements of abuse to substantiate the abuse." Pl. Resp.

City Def. Mot. Summ. J. 32, ECF 40.

Plaintiff contests Detective Asla's competence in leading the investigation. For example,

regarding the prosecution's reliance on the victim's statements, Plaintiff argues:

> Asla manifests a total disinterest in receiving education, training and skills to deal
> with the very complex and special needs of child sex investigation. He did not
> consult with any psychologist to help him understand the underpinnings of how a
> child could change stories and be so strongly influenced by adults.

*Id.* But even if Plaintiff can prove that Detective Asla's conduct fell below a certain standard of

care, he does not adequately rebut the presumption of immunity for Detective Asla that was

established by Plaintiff's indictment. Plaintiff cannot attribute his ongoing prosecution to

Detective Asla's conduct because he does not present evidence that Detective Asla improperly

pressured the prosecutor or knowingly provided her with false information. *See Smiddy v.

Varney*, 665 F.2d at 266 ("[A] showing that the district attorney was pressured or caused by the

investigating officers to act contrary to his independent judgment will rebut the presumption and

remove the immunity."). Nothing in the record before the Court shows or creates a genuine issue

of material fact that the arrest, indictment, or ongoing prosecution were based on false testimony

or evidence fabricated by Detective Asla.

As for the victim's statements, Plaintiff is correct that "uncorroborated, inconsistent

statements of [a] very young child" are insufficient to establish probable cause." *Stoot v. City of

Everett*, 582 F.3d 910, 921 (9th Cir. 2009). But such statements, when coupled with other

evidence, can be enough. *Id.* at 920. Plaintiff submits the Oregon Department of Justice's

"Oregon Interviewing Guidelines" for child abuse assessment as evidence that Defendants did

not follow proper procedure in conducting the forensic interview of A.S. Pl. Ex. 6, ECF 38-6.

But as the Ninth Circuit has stated:

> [T]here is no constitutional due process right to have a child witness in a child
> sexual abuse investigation interviewed in a particular manner, or to have the
> investigation carried out in a particular way. . . . Consequently, mere allegations
> that Defendants used interviewing techniques that were in some sense improper, or
> that violated state regulations, without more, cannot serve as the basis for a claim
> under § 1983.

*Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001).

Plaintiff does not show that the victim's statements were inconsistent as to material

issues. The victim did not change her story as to the identity of the perpetrator, where the abuse

took place, what she was doing when she was abused, what exactly the perpetrator did, and the

fact that the perpetrator used a bottle of lotion. That some details or words the victim used

changed over time does not establish that Detective Asla lacked probable cause to continue to

investigate Plaintiff.

Plaintiff also alleges that Detective Asla improperly directed officers to turn off the audio

to their body-worn cameras while executing search warrants. The parties do not dispute that the

officers deactivated audio recordings on their body-worn cameras while conducting the warrant

searches. But Plaintiff fails to explain how the officers violated his constitutional rights when

they turned off the audio. Plaintiff does not show that the absence of audio recordings during the

searches led to fabricated or otherwise tainted evidence.

Most importantly, Plaintiff concedes that Detective Asla had probable cause to arrest him

and begin investigating him for the alleged crimes. In addition, Plaintiff's indictment by a grand

jury is *prima facie* evidence that probable cause existed at the time. And "[o]nce probable cause

is established, 'an officer is under no duty to investigate further or to look for additional evidence

which may exculpate the accused.'" *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013)

(quoting *Broam*, 320 F.3d at 1032); *see Ewing*, 588 F.3d at 1277 ("Once he has probable cause,

an officer is not ordinarily required to investigate or seek further corroboration.").

      Plaintiff asserts that probable cause dissipated at some point before trial, and from that

point forth, his prosecution was malicious. But the Court must presume that once the criminal

complaint was filed and Plaintiff was indicted, the prosecuting attorney exercised independent

prosecutorial judgment. It is Plaintiff's burden to rebut that presumption, which he fails to do.

*See Newman v. Cnty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (discussing that a plaintiff

bears the burden of producing evidence to rebut the presumption that a prosecutor exercised

independent judgment in determining probable cause). Thus, even if probable cause dissipated

before his trial and acquittal, Plaintiff fails to present evidence that Detective Asla was

responsible for his ongoing prosecution. [5]

      Lastly, any claim that Plaintiff has about the sufficiency of Defendants' probable cause

determinations were previously litigated in his state court criminal case. Plaintiff's criminal

defense counsel moved to suppress all physical evidence seized during the search of his home for

lack of probable cause. Brown Decl. Ex. 2. Plaintiff's counsel also filed a motion to controvert,

challenging the truthfulness of Detective Asla's affidavits in support of the warrants to search

Plaintiff's home and the music studio. Brown Decl. Ex. 4. After hearing oral arguments on both

motions before trial, the state court judge ruled from the bench, denying both motions. Thus, the

issue of probable cause to search Plaintiff's home and the music studio has already been litigated

---

[5] Most of the investigatory actions by Detective Asla, including obtaining the CARES interview
and evaluation, securing and executing search warrants, and seizing electronic devices were done
before Plaintiff was indicted.

and determined. Plaintiff presents no new evidence from which the Court finds reason to depart from the state court's findings.

### B.    Officer Keidel

Plaintiff states no specific claims against Officer Keidel in his Complaint and makes no specific argument in his briefing explaining Officer Keidel's role in violating his constitutional rights. Based on the record, Officer Keidel's was involved only to execute Plaintiff's second arrest for violating his release agreement, which Plaintiff describes in the "Facts" sections of his Complaint and his Response Brief.

After Plaintiff was first arrested on March 9, 2019, he posted bail and was released the following afternoon with the provision that he have no contact with the victim's family. After the victim's mother informed the Sherwood Police Department that she received an email from Plaintiff, Officer Keidel determined that there was probable cause to arrest him for violating the no contact provision. She arrested him again on March 12, 2019. Plaintiff then remained in custody until he was acquitted at trial.

Plaintiff appears to claim that Officer Keidel did not have probable cause to arrest him for violating his no contact provision. But Plaintiff also concedes that Defendants "likely possessed probable cause to arrest Plaintiff initially and hold him for prosecution" in March 2019. Compl. ¶ 76. Plaintiff claims that Defendants knew by May 2019 that the auto-billing software could have shown that the email from Plaintiff's account was not sent by him volitionally. But Officer Keidel had no further involvement with Plaintiff's case after she arrested him. Plaintiff makes no specific claim that Officer Keidel gave false statements, fabricated evidence, or otherwise impeded Defendant Brown's independent judgment. Thus,

even if probable cause to arrest and hold Plaintiff dissipated over time, Plaintiff's constitutional claims against Officer Keidel fail.

Because Plaintiff has not established that either Detective Asla or Officer Keidel violated his constitutional rights, the Court need not address the second prong of the qualified immunity analysis. Under existing law, the individual Defendants did not violate Plaintiff's constitutional rights; therefore, they could not have violated constitutional rights that were clearly established. Accordingly, Defendants Asla and Keidel are entitled to qualified immunity.

## III.    *Monell* Liability

Plaintiff claims that the City of Sherwood is liable for his malicious prosecution by the individual Defendants. For a municipality to be liable for claims brought under 42 U.S.C. § 1983, a plaintiff must show that a municipal custom or policy caused the violation of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a municipality is a "person" subject to liability under § 1983 when it causes a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). The municipality itself must cause the constitutional deprivation and may not be held vicariously liable for the unconstitutional acts of its employees under a *respondeat superior* theory. *Id.*; *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). The Ninth Circuit has held that a plaintiff may establish municipal liability under *Monell* in one of three ways: (1) the government official "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity," (2) "the individual who committed the constitutional tort was an official with final policy-making

authority," or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).

In alleging *Monell* liability against the City, Plaintiff asserts that the City had a policy of withholding evidence and intentionally providing misinformation to criminal defendants about the status of that evidence; had a custom of not enforcing its policy on the use of body-worn cameras; and failed to train officers in how to properly investigate child abuse allegations. As a threshold matter, for *Monell* liability, a plaintiff must show that his constitutional rights were violated. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Because Plaintiff does not present facts showing that any individual Defendant engaged in malicious prosecution or violated his due process rights, there can be no liability for the City under *Monell*.

Even if Plaintiff had shown enough facts to survive summary judgment on his claims against the individual Defendants, he presents no facts to support his allegations of municipal liability. For example, in support of his "policy" theory, Plaintiff does not point to a particular City policy or Sherwood Police Department policy that the individual Defendants followed. He identifies no other cases in which City of Sherwood police officers withheld exculpatory evidence or misrepresented the availability of such evidence to criminal defendants. Thus, even if the individual Defendants had engaged in malicious prosecution, Plaintiff does not show that they acted pursuant to a City policy.

In support of his "failure to train" theory, Plaintiff argues that Detective Asla was left unsupervised and that the City allows officers to make all manner of discretionary decisions. But Plaintiff presents no facts that show any deficiency in how Detective Asla or other members of the Sherwood Police Department were trained. Lastly, Plaintiff alleges that the City should be liable for its custom of allowing officers to violate their own body-worn camera policies. There is no dispute that officers turned off audio while executing search warrants. But Plaintiff does not point to any Sherwood Police Department policy that prohibited the officers from doing so. Nor does Plaintiff show that turning off audio to body-worn cameras during the searches violated his constitutional rights.

Accordingly, the Court grants summary judgment for Defendant City of Sherwood on Plaintiff's *Monell* claim.

## IV.    State-Law Malicious Prosecution

Plaintiff premises his state-law claim for malicious prosecution on the same facts and allegations as his claim under § 1983. To establish malicious prosecution under Oregon law, a plaintiff must show:

> (1) the institution or continuation of the original criminal proceeding; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution.

*Merrill v. A.R.G.*, 286 Or. App. 487, 494, 398 P.3d 954, 959 (2017). Undisputed facts establish the first three elements. But as with his constitutional claim, Plaintiff does not present facts establishing that the City instituted the proceedings against him with malice. Based on the victim's statements to investigators, an investigation was initiated, and Plaintiff was indicted by a grand jury on twenty-four counts of sexual abuse, sodomy, and unlawful sexual penetration. Plaintiff concedes that Defendants had probable cause to arrest him and begin criminal

proceedings against him. And, as with his constitutional claim, Plaintiff does not create a dispute of fact as to whether probable cause dissipated before he was tried and acquitted. Thus, Plaintiff's state-law claim for malicious prosecution fails for the same reason his § 1983 claims fail.

## CONCLUSION

Taken as true, Plaintiff's allegations of investigatory and prosecutorial misconduct are troubling. But the doctrines of absolute immunity and qualified immunity preclude liability for the individual Defendants. And Plaintiff does not allege facts to support a claim for municipal liability against the City. Plaintiff's claims for malicious prosecution and due process violation against all Defendants fail as a matter of law. Accordingly, Defendants' Motions for Summary Judgment [24][27] are GRANTED.

IT IS SO ORDERED.

DATED:____9/14/2022_____.


*Michael W. Mosman*
_____
MICHAEL W. MOSMAN
Senior United States District Judge

25 – OPINION & ORDER